IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HERITAGE FOUNDATION )<br>214 Massachusetts Avenue, NE )<br>Washington, D.C.  20002; )<br>)<br>MIKE HOWELL )<br>214 Massachusetts Avenue, NE )<br>Washington, D.C.  20002 )<br>)<br>          *Plaintiffs*, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF HOMELAND )<br>SECURITY )<br>2707 Martin Luther King Jr., Ave, SE )<br>Washington, DC 20528, )<br>)<br>          *Defendant*. )<br>_____) | Civil Action No. |

## COMPLAINT

COMES NOW Plaintiffs Heritage Foundation ("Heritage") and Mike Howell (collectively "Plaintiffs") to bring this action against the U.S. Department of Homeland Security ("DHS") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  In support thereof, Plaintiffs state the following:

1. The University of Dayton's PREVENTS-OH Program released a report prominently including Plaintiff Heritage on a "Pyramid of Far-Right Radicalism" ("TVTP"). *See, e.g.*, Media Resource Center, *How Biden's DHS is Weaponizing an Anti-Terror Program Against Conservatives, Christians & the GOP* (May 25, 2023) (Ex. A); Aaron Kliegman, *University Program Linking Christinas, Republicans to Nazi's Granted DHS Funds Under "Anti-Terror" Initiative*, Fox News (May 25, 2023) (Ex. B).  This pyramid grouped together not only Plaintiff

Heritage and news outlets such as Fox News, but also neo-nazis. Its implication was clear: Heritage is "extrem[e]" and "radical[]", separated from some of the most hated groups in America—such as neo-nazis—only by degree.



[1]

2. According to news reports, University of Dayton's PREVENTS-OH Program was recently awarded $352,109 "to 'draw on the expertise of the University of Dayton faculty' to fight 'domestic violence extremism and hate movements.'" *Id*. Upon information and belief, the grant was awarded *after* the "Pyramid of Far-Right Radicalism" was created.

3. Accordingly, DHS knew, or should have known, that the grantee had included Heritage in its "Pyramid of Far-Right Radicalism" when the grant was awarded.

4. The integrity and transparency of the United States Government are of the utmost importance. And Plaintiffs are justifiably alarmed by the foregoing. Accordingly, Plaintiffs seek to determine to what extent Heritage has been targeted by DHS and labeled an "extrem[e]" or

---

[1] Exhibit B at 3.

"radical[]" group when it awarded a grant to a program asserting that conservative organizations are the "base" of a pyramid supporting some of the most foul and noxious organizations in the United States. But DHS repeatedly failed to respond to Plaintiffs' FOIA Request seeking information about how DHS views Heritage. Plaintiffs are thus left with no remedy but this lawsuit to determine if DHS in facts believes Heritage, Fox News, and others to be worthy of being lumped in the same group as Nazis.

## PARTIES

5. Plaintiff The Heritage Foundation is a Washington, D.C.-based nonpartisan public policy organization with a national and international reputation whose mission is to "formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense." Heritage Foundation, *About Heritage*, *found at* https://www.heritage.org/about-heritage/mission (last visited Sept. 25, 2023). Heritage is a not-for-profit section 501(c)(3) organization which engages in substantial dissemination of information to the public. Heritage operates a national news outlet, *The Daily Signal*.

6. Plaintiff Mike Howell leads The Heritage Foundation's Oversight Project and is an author for *The Daily Signal*. The Oversight Project is an initiative aimed at obtaining information via Freedom of Information Act requests and other means in order to best inform the public and Congress for the purposes of Congressional oversight. The requests and analysis of information are informed by Heritage's deep policy expertise. By function, the Oversight Project is primarily engaged in disseminating information to the public. *See, e.g.*, Oversight

Project, *found at* https://www.heritage.org/oversight (last visited Sept. 28, 2023); Twitter, found at @OversightPR (last visited Sept. 28, 2023).

7.  Defendant U.S. Department of Homeland Security ("DHS") is an Executive Branch department of the United States Government. Relevant to the herein matter, DHS is charged with protection of the United States from terrorism and other homeland security threats. DHS is an agency within the meaning of 5 U.S.C. § 552(f)(1) and, upon information and belief, has in its possession, custody, and control records to which Plaintiffs seeks access.

## JURISDICTION AND VENUE

8.  The Court has subject matter jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

9.  Venue lies in this district pursuant to 28 U.S.C. section 1391(e).

10. Plaintiffs seek declaratory relief under 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

11. On or about May 25, 2023, Plaintiffs submitted a FOIA request to DHS seeking "All records containing the terms 'Heritage!' or 'Heritage Foundation!.'"[2] (Ex. C).

12. Plaintiffs limited the scope of the request to the following custodians of records:

1) the Office of the Secretary;
2) the Office of Public Affairs; and
3) the Center for Prevention Programs and Partnerships' Targeted Violence and Terrorism Prevention Grant Program.

*Id*.

---

[2] The FOIA request noted that the "'!' denotes a root expander for the purposes of this Request." (Ex. C).

13. Each request was further limited as Plaintiffs requested only those documents from January 20, 2021 to the present and excluded press clippings and mailers. *Id.*

14. The requests further sought a fee waiver. *Id.*

15. DHS has never substantively responded to the request. On August 9, 2023, DHS acknowledged receipt of the request. (Ex. D). In the same correspondence, it noted that there may be some delay in responding to the request and invoked the 10-day extension pursuant to the Code of Federal Regulations. *Id.*; 8 C.F.R. Part 5 § 5.5(c). This invocation of the 10-day extension was sent 51 business days *after* the FOIA request was filed. The correspondence further "conditionally" granted Plaintiffs request for a fee waiver. *Id.*

16. Also on August 9, 2023, Plaintiffs received additional correspondence from DHS noting that "Our tasking office told us the results of your search was voluminous at 48gb." (Ex. E). DHS asked Plaintiffs to narrow the time frame and to provide additional keywords. *Id.* In response, on August 10, 2023, Plaintiffs narrowed the request by stating that they did not seek " . . . correspondence that merely forwards press clippings, such as news accounts or opinion pieces, newsletters, and published or docketed materials, if that correspondence has no . . . substantive comment added by any party in the thread." (Ex. F). Plaintiffs also sought affirmative feedback from the DHS on Plaintiffs' good faith efforts to meet and confer, writing, "[p]lease let me know if this helps." *Id.* DHS did not respond. Plaintiffs have stood and still stand ready to work with DHS in good faith.

17. Since Plaintiffs' August 10, 2023 email, DHS has neither otherwise responded nor produced documents in response to the request. DHS' SecureRelease Portal confirms no additional action has been taken on the matter. (Ex. G).

18. Thirty business days from May 25, 2023 is July 11, 2023.

19. As of the date of this filing, DHS has failed to produce any records, responsive or other, in response to this request nor has it otherwise demonstrated that the requested records are exempt from production. Additionally, DHS has failed to meet the thirty business day time frame to provide a determination. *See* 5 U.S.C. § 552(a)(6)(A).

20. Pursuant to federal law, Plaintiffs are deemed to have exhausted their administrative remedies as DHS failed to make a determination within the applicable time frame. *See* 5 U.S.C. § 552(a)(6)(C)(i).

## CLAIMS

## COUNT I

**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Searches for Responsive Records**

21. Plaintiffs incorporate by reference all preceding paragraphs and incorporate each paragraph of each count as applicable to each other count.

22. Plaintiffs properly requested records within the possession, custody, and control of DHS.

23. DHS has failed to produce any responsive records.

24. DHS is subject to FOIA and therefore must comply with 5 U.S.C § 552 and make reasonable efforts to search for requested records. Plaintiffs have a legal right to obtain such records, and no legal basis exists for DHS' failure to conduct reasonable searches for records.

25. Plaintiffs have a statutory right to the information sought, are being irreparably harmed by DHS' unlawful failure to comply with FOIA and failure to conduct searches for responsive records and Plaintiffs will continue to be irreparably harmed unless DHS is compelled to comply with applicable federal statutes.

26. 5 U.S.C. § 552(a)(4)(B) authorizes the grant of injunctive relief to Plaintiffs as DHS continues to violate the FOIA provisions and improperly withhold responsive records.

27. 28 U.S.C. § 2201 authorizes declaratory relief because an action and justiciable controversy exists regarding DHS' actions.

## COUNT II

### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

28. Plaintiffs incorporate by reference all preceding paragraphs and incorporate each paragraph of each count as applicable to each other count.

29. Plaintiffs properly requested records within the possession, custody, and control of the Defendants.

30. DHS is subject to FOIA and therefore must release any non-exempt records and provide lawful reasons for withholding any materials deemed exempt.

31. DHS is wrongfully withholding non-exempt records requested by Plaintiffs by failing to produce any records response to Plaintiffs' request.

32. No basis exists for DHS' failures to provide responses to Plaintiffs' request. Plaintiffs have constructively exhausted their administrative remedies under FOIA by virtue of DHS' failure to reach a determination on the request and release responsive records.

33. Plaintiffs have a statutory right to the information sought, are being irreparably harmed by DHS' unlawful failure to comply with FOIA and failure to conduct searches for responsive records and Plaintiffs will continue to be irreparably harmed unless DHS is compelled to comply with applicable federal statutes.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs asks this Court to:

a. Declare unlawful DHS' refusal to disclose requested records;

b. Declare that DHS' failure to make determinations to Plaintiffs' request within the statutory time frame violates FOIA;

c. Order DHS to conduct a search for any and all records responsive to Plaintiffs' FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiffs' FOIA request;

d. Order DHS to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Plaintiffs' FOIA request as well as a Vaughn index of any responsive records withheld under claim of exemption;

e. Enjoin DHS from continuing to withhold any and all non-exempt records responsive to Plaintiffs' FOIA request;

f. Award Plaintiffs the costs of this action and reasonable attorney's fees; and

g. Grant such other and further relief as this Court deems equitable and just.

Dated:  October 24, 2023                                              Respectfully submitted,

/s/ Joseph B. Edlow
JOSEPH B. EDLOW
Bar No.: MD0147
The Law Offices of Joseph Edlow LLC
1201 Seven Locks Road, Suite 360
Rockville, Maryland 20854
Telephone: 410-303-1450
Email: joseph@edlowlaw.com

SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email:  samueledewey@sedchambers.com

*Counsel for Plaintiff*